UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 04-CV-4093 (JFB)

———————

JULIO ZAMORA,

Petitioner,

VERSUS

W.E. PHILLIPS,
SUPERINTENDENT,

Respondent.

———————

MEMORANDUM AND ORDER
August 8, 2006

———————

JOSEPH F. BIANCO, District Judge:

Petitioner Julio Zamora petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his murder conviction. Zamora was convicted following trial of two alternative counts of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. Zamora challenges only his murder conviction, alleging that the trial court erred in failing to instruct the jury on the affirmative defense of extreme emotional disturbance, depriving him of a fair trial and his constitutional right to present a defense. For the following reasons, the petition is denied.

I. BACKGROUND

A. THE UNDERLYING FACTS

The following facts are adduced from the instant petition and underlying record.

On March 25, 2000, Zamora attended a baby shower where he saw his former girlfriend, Rocio Hernandez, kissing her then current boyfriend, Luis Agudo. (Tr. at 557-58.)[1] A short time later, Zamora shot and killed Hernandez. (*Id.* at 542-43, 496-97, 509.)

Zamora, who testified in his own defense at trial, stated that he started dating Hernandez in 1997, and continued that relationship until 2000. (*Id.* at 537-38.) During that time, Zamora moved to Ohio for two months. (*Id.*

———

[1] References to "Tr." are to the transcript of the trial in this case.

at 538.) When he returned from Ohio, friends informed him that Hernandez had been spending time with Agudo. (*Id.* at 542.) Agudo testified that, prior to the night in question, Zamora learned about Hernandez and Agudo's relationship and assaulted them with broken bottles. (*Id.* at 477-478.) Zamora testified that Hernandez denied having a relationship with Agudo, and that Zamora began dating her again when he returned from Ohio. (*Id.* at 547-49.)

The day before the baby shower, Zamora asked Hernandez to attend the shower with him, but she declined, stating that she had to work. (*Id.* at 541.) For this reason, Zamora testified that he did not expect to see Hernandez at the baby shower. (*Id.* at 541.)

Zamora left the baby shower after approximately twenty minutes, drove three blocks to buy cigarettes, and then returned to the party. (*Id*. at 540.) From his car window, he saw Hernandez kissing Agudo at the door of the house. (*Id*. at 540, 557-58.) Zamora testified at trial that at this time his "emotional system . . . fell down," that he felt "cold from head to toes," and that he lost control of himself. (*Id.* at 540-42.) He pulled a gun from his car in what he described as a "dreamlike" state, and shot Hernandez in her torso, causing her to fall. (*Id.* at 436-39, 540-41.) As she tried to get up, Zamora shot her multiple times. (*Id*. at 439.) Zamora also attempted to shoot Agudo, but missed. (*Id.* at 463-65.) Hernandez died at the scene from a total of five gunshot wounds to the torso with perforations of the heart, lung, and aorta. (*Id.* at 496-97, 509.)

Immediately after the shooting, Zamora threw the gun away and drove to the house of a friend, Jose Cardona Velez ("Cardona"), in Ohio. (*Id.* at 439.) He found a job in construction and, approximately one week later, he confessed to Cardona that he shot Hernandez. (*Id.* at 436-439.) Zamora was arrested in Dayton, Ohio, approximately one week after the murder. (*Id.* at 529-530.)

B. PRE-TRIAL AND TRIAL PROCEDURES

Zamora was indicted in Queens County with two alternative counts of murder in the second degree in violation of New York Penal Law §§ 125.25[1][2], one count of criminal possession of a weapon in the second degree in violation of New York Penal Law § 265.03, and one count of criminal possession of a weapon in the third degree in violation of New York Penal Law § 265.02[1].

Zamora was tried before a jury and found guilty of one count of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. (*Id*. at 680-82.)

At trial, the People presented evidence that Zamora's behavior immediately after the crime was inconsistent with extreme emotional disturbance in that he had the presence of mind to throw away the murder weapon and safely drive to Ohio. (*Id*. at 439.)

Agudo testified that, on the night in question, he exited the house with Hernandez and walked to the street to look for a taxi while Hernandez remained at the front door. (*Id*. At 459.) He then heard two gunshots, turned around, and saw Zamora fire two gunshots in Agudo's direction. (*Id*. at 462-65.) He also testified that he ran to Hernandez and saw that she had been shot multiple times in the chest. (*Id*. at 466.) Zamora's friend, Cardona, testified that Zamora drove to Ohio after the shooting, obtained a job in construction, and eventually confessed to shooting Hernandez. (*Id*. at 434-37.)

2

Zamora testified in his own defense, admitting that he shot Hernandez, and did so because he lost control of himself and felt "cold from head to toes" when he saw Hernandez kissing Agudo. (*Id.* at 540.)

At the conclusion of the evidence, before summation, Zamora requested that the trial judge charge the jury with the affirmative defense of extreme emotional disturbance. (*Id.* at 582-83.) If this charge were given, and if the jury found extreme emotional disturbance existed, it would have reduced Zamora's second degree murder charge to manslaughter in the first degree. N.Y. PENAL LAW § 125.25 (McKinney 2006); *People v. Casassa*, 49 N.Y.2d 668, 679 (N.Y. 1980). The trial judge denied Zamora's request to charge the jury with this defense (Tr. at 590-92) and Zamora was found guilty of second degree murder. (*Id.* at 680.) The trial judge stated:

> When this case is analyzed and I compare the various facts here to the facts in the multitude of cases that examine extreme emotional disturbance, the understandable human response deserving of mercy here would be called forth by one possible suitor seeing another possible suitor holding hands and kissing a young girl on the street. I certainly don't think that in and of itself, which is the totality of what we have here, being the situation giving rise to the defendant's actions, kissing on a street corner of a boyfriend of a girlfriend who might have multiple boyfriends, was certainly never one that could constitute this understandable human response deserving of mercy. It would be a pitiable situation if it was. . . . And in fact we have one case that's as much on point as you might get. The [Dominguez] case, that's a Second Department '96 case. It says the defendant's conduct in leaving the scene after the shooting, consciously deciding not to return home, disposing of the weapon, fleeing the state the following day and avoiding apprehension after a period of time, is inconsistent with the loss of control associated with extreme emotional disturbance. Here we had a defendant who immediately took flight, who took flight on an arduous journey. We're not talking about a short journey home. We're talking about a journey that went through three different states, to arrive at the home of either a cousin or a friend, [Cardona] who testified, immediately have a plan of action and asking for refuge and then getting a job and making immediate plans to support himself. Everything flies in the face of the loss of self-control that is contemplated.

(*Id.* at 590-92.)

On July 23, 2001, Zamora was sentenced to concurrent terms of imprisonment of twenty-two years to life for the conviction of murder in the second degree, fifteen years for the conviction of criminal possession of a weapon in the second degree, and seven years for the conviction of criminal possession of a weapon in the third degree. (Sent. Tr. at 15-16.)

## C. STATE APPEALS AND POST JUDGMENT MOTIONS

Zamora appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Department, claiming that the trial court erred in refusing to instruct the jury on the affirmative defense of extreme emotional disturbance. (Resp. Aff. in Opp. at 4.) On October 27, 2003, the Appellate Division affirmed the conviction, finding Zamora's claim without merit because "no reasonable view of the evidence support[ed] the conclusion that [Zamora] acted with complete loss of control." *People v. Zamora*, 766 N.Y.S.2d 850, 850 (N.Y. App. Div. 2003). By letter dated November 3, 2003, Zamora applied to the New York Court of Appeals for permission to appeal from the Appellate Division's decision, which was denied on December 31, 2003. *People v. Zamora*, 1 N.Y.3d 583, 583 (N.Y. 2003).

## D. THE INSTANT ACTION

Zamora filed the instant petition on September 22, 2004, arguing that the trial court erred in failing to instruct the jury on the affirmative defense of extreme emotional disturbance, depriving him of a fair trial and his constitutional right to present a defense. The case was assigned to the Honorable Carol Bagley Amon. On December 13, 2004, respondent filed his opposition papers. Zamora filed his reply on April 13, 2006. On February 10, 2006, this case was reassigned to this Court. Oral argument was held on July 20, 2006. At oral argument, the Court provided Zamora with a Spanish interpreter at his request.

## II. DISCUSSION

### A. THE STANDARD OF REVIEW

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the

4

Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case. *Id.*; *see also Earley*, 451 F.3d at 74.

AEDPA establishes a deferential standard of review – "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that while "[s]ome increment of incorrectness beyond error is required . . . the increment not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrest*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *accord Earley*, 451 F.3d at 74.

B. APPLICATION

Zamora raises only one issue – whether his constitutional rights were violated because the trial judge denied his request that the jury be charged that if it found Zamora acted under extreme emotional disturbance when he shot Hernandez, then it could reduce Zamora's second degree murder charge to manslaughter in the first degree. The Court concludes that (1) the Appellate Division's decision to reject Zamora's claim is not contrary to, or an unreasonable application of, clearly established federal law, and (2) the trial judge did not err in denying Zamora's request to give the charge of extreme emotional disturbance because the evidence presented at trial failed to warrant such an instruction.

A state jury charge is a question of state law and is not reviewable on a federal habeas corpus absent a showing that the charge deprived the defendant of a federal constitutional right. *See United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974) (failure of state trial court to instruct jury on intoxication or its possible effect on intention in state prosecution for manslaughter did not violate defendant's constitutional right to due process); *accord Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Grey v. Henderson*, 788 F. Supp. 683, 693 (E.D.N.Y. 1991). In evaluating the effect of a jury instruction, or the refusal to give a particular instruction, the habeas court must view the instruction "in the context of the overall charge." *Cupp*, 414 U.S. at 146-47. Furthermore, "where the alleged error is the failure to give an instruction the burden on the petitioner is 'especially heavy.'" *Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (9th Cir. 1992) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)); *accord Cupp*, 414 U.S. at 146-147 (holding that a defendant is not deprived of a federal constitutional right simply because "the instruction is undesirable, erroneous, or even 'universally condemned' [. . . .] The question is whether the 'ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting and reaffirming *Cupp*).

Whether the Constitution requires a trial judge to charge the jury on lesser included

5

offenses in noncapital cases is unsettled. "Although the Supreme Court has determined that in capital cases a judge must charge the jury on lesser included noncapital offenses where the evidence warrants such a charge . . . , it has expressly reserved the question whether due process requires a lesser included offense instruction in a noncapital case." *Rice v. Hoke*, 846 F.2d 160, 164 (2d Cir. 1988) (citing *Beck v. Alabama*, 447 U.S. 625, 627, 638 n. 14 (1980)). In a number of cases, the Second Circuit has expressly declined to decide whether such an instruction in noncapital cases is required under the Constitution, but instead concluded that the evidence at trial did not warrant such an instruction. *See, e.g.*, *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (declining to consider whether the Constitution requires submission of lesser-included offenses in noncapital cases because such a decision would announce a "new rule" and violate *Teague v. Lane*, 489 U.S. 288 (1989)); *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir.) ("We need not resolve the issue in this case, however, because the trial court properly concluded that the evidence in this case did not warrant a [lesser included instruction]."), *cert. denied* 515 U.S. 1136 (1995); *Rice*, 846 F.2d at 165; *see also Jones v. Speckard*, 827 F. Supp. 139, 146 (W.D.N.Y.) (noting that "[a]lthough the issue has been raised in several cases, the court has declined to reach the issue"), *aff'd mem.*, 14 F.3d 592 (2d Cir. 1993); *Smithwick v. Walker*, 758 F. Supp. 178, 187 (S.D.N.Y.) (same), *aff'd mem.*, 948 F.2d 1278 (2d Cir. 1991). Based upon the Supreme Court's failure to address whether a lesser included offense charge is required in non-capital cases, several district courts have denied habeas relief on this issue. *See Peakes v. Spitzer*, No. 04 Civ. 1342 (RMB), 2004 WL 1366056, at *11 (S.D.N.Y. June 16, 2004) (report and recommendation) (collecting cases). However, although not in the context of a lesser included offense, the Second Circuit has granted habeas relief due to the erroneous failure to give a justification charge, finding (1) that the failure violated due process, and (2) was contrary to the Supreme Court decision in *Cupp*. *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005). Here, this Court need not address the constitutionality of Zamora's claim because, as discussed *infra*, the trial court correctly ruled that the evidence did not warrant the requested instruction. *See Rice*, 846 F.2d at 165; *see also Jackson*, 404 F.3d at 621 (noting that a court on habeas review, before considering whether the error warrants habeas relief, must first determine whether petitioner was erroneously deprived of a jury instruction under state law) (quoting *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001)).

Under New York law, extreme emotional disturbance is a partial affirmative defense to murder in the second degree. *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 166 (2d Cir. 2006). "If a defendant charged with second-degree murder proves extreme emotional disturbance by a preponderance of the evidence, he is not acquitted; rather, the charge of conviction is reduced from murder to [the lesser-included offense of] manslaughter in the first degree." *Id.*; *see Patterson v. N.Y.*, 432 U.S. 197, 205-06 (1977) (holding that defendant's conviction of second degree murder under New York statute did not deprive him of due process by placing the burden on him of proving by preponderance of evidence the affirmative defense of extreme emotional disturbance where the defense does not serve to negate facts of crime that state must prove under statute to convict for murder); *compare Mullaney v. Wilbur*, 421 U.S. 684, 703-04 (1975) (holding that defendant's murder conviction under Maine statute deprived him of due process by placing the burden on him

of proving by preponderance of evidence affirmative defense of extreme emotional disturbance where defense serves to negate facts of crime that state must prove under statute to convict for murder).

In the instant case, the trial judge did not err in refusing to charge the affirmative defense of extreme emotional disturbance. Under New York State law, "for the defendant to be entitled to a charge on extreme emotional disturbance, sufficient evidence must be presented for the jury to find by a preponderance of the evidence that the elements of the affirmative defense are satisfied." *People v. Moye*, 66 N.Y.2d 887, 889-890 (1985); *accord People v. Harris*, 95 N.Y.2d 316, 319 (N.Y. 2000). This defense requires proof of both a subjective and objective element. *Harris*, 95 N.Y.2d at 319; *Rice*, 846 F.2d at 166. "There must be a subjective determination that the particular defendant acted under an extreme emotional disturbance and an objective determination that there was a reasonable explanation or excuse for that mental state." *Rice*, 846 F.2d at 166. "The subjective element focuses on the defendant's state of mind at the time of the crime and requires sufficient evidence that the defendant's conduct was actually influenced by an extreme emotional disturbance." *Harris*, 95 N.Y.2d at 319. The objective element requires a "reasonable explanation or excuse for the emotional disturbance." *Id*.

The subjective element is associated with a loss of self control. *Id.*; *Moye*, 66 N.Y.2d at 890. Acting out of anger or embarrassment is "not equivalent to the loss of self control generally associated with" the defense of extreme emotional disturbance. *People v. Walker*, 64 N.Y.2d 741, 743 (N.Y. 1984); *People v. Gonzalez*, 670 N.Y.S.2d 849, 849 (N.Y. App. Div. 1998) (finding that, although victim insulted defendant, defendant's resulting anger and embarrassment were not equivalent to loss of self control). In determining whether a petitioner has acted out of a loss of self control, the court will look at the petitioner's conduct before and after the homicide. *See People v. Dominguez*, 640 N.Y.S.2d 583, 583-84 (App. Div. 1996); *People v. Feris*, 535 N.Y.S.2d 17, 18 (App. Div. 1988). For example, in *Dominguez*, the court found that, although the petitioner claimed to be frightened at the time he shot the victim, his actions after the shooting were inconsistent with the loss of self control associated with the defense of extreme emotional disturbance. 640 N.Y.S.2d at 583-84. In that case, the defendant fled the scene of the shooting, disposed of the murder weapon, consciously decided not to return home, and fled the state the following day. *Id.* The court found, under such circumstances, an instruction on extreme emotional disturbance was not warranted because there was insufficient evidence to support such a finding. *Id.*; *see also Shiwlochan v. Portuondo*, 345 F. Supp. 2d 242, 269 (E.D.N.Y. 2004) (finding that defendant's efforts to hide murder weapon and evade police "are products of a conscious decision" and undermine extreme emotional disturbance claim).

Similarly, in *Rice*, the defendant and the victim argued and exchanged punches after the victim insulted the defendant's wife. After the fight, the defendant left the scene and returned a few minutes later with a gun. *Rice*, 846 F.2d at 162-63. He fired five shots at the victim, who died later that day of his wounds. *Id*. The trial judge declined to charge the jury with extreme emotional disturbance because "there was no reasonable view of the evidence" to support such a charge. *Id*. at 162-63. The Second Circuit

7

agreed, finding that "the proof showed only that Rice was angry" and "[a]nger alone . . . does not amount to a mental infirmity or the loss of self-control associated with the defense of extreme emotional disturbance." *Id*. at 166.

The evidence submitted at trial does not support a subjective loss of self control. The evidence demonstrates that Zamora, like the defendants in *Dominguez* and *Rice*, acted consciously and deliberately. After seeing Hernandez kissing Agudo, Zamora shot her multiple times in the torso, and had the presence of mind to flee the scene, throw his gun away, and safely drive to Ohio where he lived and worked for one week before confessing to Hernandez's murder. Such deliberate conduct undermines Zamora's claim that he acted out of the loss of self control generally associated with the defense of extreme emotional disturbance. *See Rice*, 846 F.2d at 166; *Dominguez*, 640 N.Y.S.2d at 583-84.

Even if the evidence in this case established the subjective element of the defense, the evidence must also establish the objective element – a reasonable explanation or excuse for the emotional disturbance. *People v. Casassa*, 49 N.Y.2d 668, 679 (1980). In evaluating the reasonableness of a petitioner's explanation or excuse, the trial court must determine whether the petitioner's response was "an understandable human response deserving of mercy." *Id.* at 680-81. Acting out of anger or jealousy does not constitute a reasonable explanation or excuse. *See Rice*, 846 F.2d at 166; *People v. Berk*, 629 N.Y.S.2d 588, 590 (N.Y. App. Div. 1995); *Feris*, 535 N.Y.S.2d at 18. For example, in *Berk*, the court held that the defendant's response was "deliberate and rational and the result of his malevolence" rather than a response deserving of mercy. *Berk*, 629 N.Y.S.2d at 590. In that case, the defendant saw his estranged wife engaging in sexual activity with another man, chased her into the kitchen, and shot at her as she pleaded for her life. *Id.* at 589; *see Feris*, 535 N.Y.S.2d at 18 (finding that the trial court did not err in failing to charge jury with extreme emotional disturbance where defendant stabbed victim due to anger and jealously over victim's new boyfriend).

Like the defendant in *Berk*, Zamora failed to show, under the objective element, that there was sufficient evidence for a jury to conclude that his response is one that constitutes extreme emotional disturbance. Merely witnessing a former girlfriend kissing another man does not, by itself, constitute evidence that would warrant an instruction allowing the jury to find a lesser included offense based on extreme emotional disturbance. *See Rice*, 846 F.2d at 166. Furthermore, Zamora's contention that he was emotionally devastated to discover Hernandez kissing Agudo is undermined by the evidence that he previously knew about their relationship – indeed, he had previously assaulted them. (Tr. at 477-78.)

In sum, Zamora's response on the night of the murder is inconsistent with extreme emotional disturbance – rather, as the trial court correctly found, it is consistent with anger and jealousy. Acting out of anger or jealousy, as New York courts have consistently held, does not entitle a defendant to an extreme emotional disturbance instruction. *See Rice*, 846 F.2d at 165-66; *People v. Felix*, 648 N.Y.S.2d 87, 88 (N.Y. App. Div. 1996) (evidence establishing defendant "acted out of anger or embarrassment" not sufficient to warrant extreme emotional disturbance instruction);

*Dominguez*, 640 N.Y.S.2d at 583-84; *People v. McDonald*, 605 N.Y.S.2d 341, 342 (N.Y. App. Div. 1993) (evidence establishing defendant "angry and hurt" insufficient to warrant extreme emotional disturbance instruction); *People v. Tulloch*, 579 N.Y.S.2d 442, 443 (N.Y. App. Div. 1992) (evidence establishing defendant was "angry" and "motivated by jealousy" insufficient to warrant extreme emotional disturbance instruction); *Feris*, 535 N.Y.S.2d at 18; *Walker*, 64 N.Y.2d at 743 (evidence establishing defendant acted out of "anger or embarrassment, or both" insufficient to warrant extreme emotional disturbance charge); *People v. Knights*, 486 N.Y.S.2d 377, 379 (N.Y. App. Div. 1985) ("The fact that the defendant had argued with his wife about her whereabouts earlier that evening and two months earlier had notified the police of his irritation regarding her immoral behavior is insufficient to give substance to the defense [of extreme emotional disturbance]".).

Accordingly, because the trial judge correctly found under New York law that the evidence established at trial did not warrant an extreme emotional disturbance instruction, the petition must be denied.

III. CONCLUSION

Zamora has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is DENIED. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 8, 2006
Central Islip, New York

\* \* \*

Petitioner appeared in these proceedings *pro se*. Respondent is represented by Assistant District Attorneys John M. Castellano and Beverly Kalman, Esqs., District Attorney Queens County Richard A. Brown, 125-01 Queens Blvd., Kew Gardens, New York 11415.